IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 3, 2021

## AARON REINSBERG v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County
No. 13-02058    Chris Craft, Judge**

_____

### No. W2019-02279-CCA-R3-PC

_____

The petitioner, Aaron Reinsberg, appeals the denial of his petition for post-conviction relief, which petition challenged his convictions of rape, assault, and official misconduct, alleging that he was deprived of the effective assistance of counsel. Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER, and J. ROSS DYER, JJ., joined.

Earnest J. Beasley, Memphis, Tennessee, for the appellant, Aaron Reinsberg.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

A Shelby County Criminal Court Jury convicted the petitioner, a former police officer, of two counts of rape, one count of assault, and two counts of official misconduct. *State v. Aaron Reinsberg*, No. W2014-02436-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Jackson, July 22, 2016).

The proof at trial established that the petitioner met the victim on January 19, 2013, when the victim was celebrating a friend's birthday on Beale Street. The victim invited the petitioner to meet with her later that night and gave the petitioner her telephone number. Over the course of the night and into the early morning hours, the petitioner and the victim sent each other multiple text messages. At some point, the victim felt "'really drunk'" and opted to go home. The victim returned home, and the petitioner continued

texting her, asking her to "'hang out.'" The victim responded to the petitioner's text messages, "intend[ing] to dismiss" him and declining to give him her address. *Id.*, slip op at 1-4.

At approximately 6:00 a.m. on January 20, 2013, the petitioner arrived at the victim's home, and the victim's roommate told him that the victim was "'basically passed out.'" The roommate returned to her bedroom as the petitioner walked to the door of the home, and the roommate assumed that the defendant left "because he was a police officer." The victim awoke to the petitioner's standing in the "doorway of her bedroom. She then vomited in a bag that was on her floor, and [the petitioner] handed a bottle of water to her." The victim passed out and "awoke to the 'weight' of [the petitioner's] body on hers." After the victim "passed out again and 'came to,'" the petitioner "was engaging in oral sex with" her. In a "half asleep" state, the victim told the petitioner to stop. The petitioner obtained the victim's address from a Shelby County Sheriff's Office database, in violation of police policy. *Id.*, slip op. at 4-8.

The jury convicted the petitioner of two counts of rape, one count of assault, and two counts of official misconduct. After merging appropriate convictions, the trial court imposed an effective sentence of 11 years. This court affirmed the petitioner's convictions and sentence on direct appeal. *Id.*, slip op. at 1.

The petitioner filed a timely petition for post-conviction relief, alleging the ineffective assistance of counsel and, after the appointment of counsel, filed an amended petition.

At the November 2019 evidentiary hearing, the petitioner testified that he went by trial counsel's office "pretty frequently" but that counsel "pretty much was always busy." He stated that he had one telephone conversation and one in-person meeting with counsel "right after I hired him" and that he met with counsel again "almost exactly a week before my trial started." The petitioner acknowledged that he received discovery materials but said that counsel never reviewed the materials with him. The petitioner said that he "made connotations and markings and stuff" on the discovery materials and left them at counsel's office but that he never had the opportunity to discuss his questions with counsel.

The petitioner stated that, one week prior to trial, counsel provided him with new discovery materials that included unredacted statements from some State witnesses but that counsel did not explain the significance of the statements. The petitioner acknowledged that he did not ask trial counsel about presenting a defense of mistake of fact or about obtaining a psychiatric examination but stated that he "didn't know what to ask and not ask." The petitioner also said that he gave a statement to the police because he "felt like I didn't have a choice to give a statement." He explained that his wife initially

waited for him at the police station but left before he completed his interview and that, in consequence, he worried whether she would "be home when I get home." He also explained that a lieutenant "told me that if I didn't have anything to hide that I should give a statement." The petitioner stated that "a lot of the things in that statement are not what I said and a lot of things that I said weren't in it." He said that, in discussing the possibility of suppressing the statement, trial counsel told him that "it wouldn't be a good idea to bring up anything . . . bad about the police, because that is what [the victim] is doing."

During cross-examination, the petitioner acknowledged that, in his first meeting with trial counsel, they discussed the charges against him and the statement he had given to police. He also acknowledged that, although counsel was unavailable when the petitioner dropped by his office and did not speak to the petitioner on the telephone, he saw counsel at court appearances. He denied that counsel addressed the petitioner's concerns at those appearances, stating that "we didn't talk much, he was always just kind of busy, so I just let him be busy." The petitioner stated that he was unaware that the State had made a plea offer until the proceeding in which counsel declined the offer and asked the case to be set for trial. He said that counsel explained to him that the State was "never going to dismiss the charges and so I went ahead and just set it for a trial." The petitioner acknowledged that he was not interested in pleading guilty and that he wanted the charges against him dismissed. The petitioner stated that trial counsel discussed a defense strategy "a little bit" with him the week before trial.

On redirect examination, the petitioner acknowledged that he received a plea offer from the State but stated that trial counsel "just denied it" without discussing it with him. The petitioner acknowledged that he wanted the State to dismiss the charges or to take the case to trial, but he denied that he was uninterested in discussing a plea offer.

Trial counsel testified that the petitioner came to his office "frequently" and that counsel's secretary would provide counsel with any information from the petitioner. Trial counsel stated that the issues in this case primarily "dealt with discovery." He said that the petitioner's statement was "the biggest problem we had" and "very much narrowed our alternatives" because there was no evidence of "anything . . . that would rise to the level of coercion, or duress such to negate the Miranda warning." Counsel also said that the "marching orders from [the petitioner] and his wife was he was not guilty of rape." Although a superior police officer told the petitioner, "'If this was me, I would'" make a statement, counsel "didn't feel I had a good faith basis [o]n which to challenge the statement," especially in light of the fact that the petitioner was a police officer trained on *Miranda* warnings.

Trial counsel stated that his defense strategy was to argue that the sexual encounter was consensual. Counsel said that he discussed the trial strategy and the

-3-

difficulty of the petitioner's statement with the petitioner.  He also said that he discussed the State's plea offer with the petitioner but that the petitioner refused "to plead guilty" and maintained his innocence.  Counsel stated that he did not have difficulty communicating with the petitioner and did not have any indication that the petitioner may have had a mental health issue, noting that he "would have requested an evaluation if I even had a slight hint of that."

During cross-examination, trial counsel stated that the petitioner consistently stated that he would not plead guilty.  Although counsel could not specifically recall, he stated that the materials that the petitioner received a week before trial most likely consisted of *Jencks* material.[1]  Counsel reiterated that the petitioner's statement was very damaging to his defense and left him with "very narrow" defense strategies.

In its written order denying post-conviction relief, the post-conviction court found that the petitioner offered no proof of what evidence trial counsel failed to discover, what other defense strategy counsel should have pursued, or what additional information counsel could have provided him that would have resulted in a different outcome at trial.  Additionally, the post-conviction court found that the petitioner presented no grounds on which his voluntary statement to the police could have been suppressed.

In this timely appeal, the petitioner argues that trial counsel performed deficiently by failing to communicate with him, failing to ensure his understanding of the case against him, failing to suppress the petitioner's statement, and failing to fully investigate.  He also argues that counsel's cumulative errors were "outcome determinative" at trial.  The State argues that the petitioner is not entitled to post-conviction relief.

We view the petitioner's claim with a few well-settled principles in mind.  Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States."  T.C.A. § 40-30-103.  A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence.  *Id.* § 40-30-110(f).  On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them.  *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).  By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal.  *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

---

[1]　　In *Jencks v. United States*, the United States Supreme Court ruled that a criminal defendant had the right to inspect prior statements or reports by government witnesses following direct examination for use in cross-examination.  *See Jencks v. United States*, 353 U.S. 657, 668-69 (1957).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Here, the petitioner has failed to carry his burden to prove by clear and convincing evidence sufficient facts to support his claim that trial counsel performed deficiently. The petitioner failed to present any evidence of what information trial counsel could have discovered with further investigation or what information counsel could have communicated to him that would have changed his trial strategy. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). Additionally, the petitioner has failed to show any legal basis on which counsel could have sought suppression of his statement. Consequently, the petitioner has failed to establish that counsel performed deficiently.

As to the petitioner's assertion that the cumulative effect of trial counsel's errors prejudiced his defense, we disagree. Instances of ineffective assistance of counsel

are deemed to constitute a single rendering of ineffective assistance.  *Thompson v. State*, 958 S.W.2d 156, 161 (Tenn. Crim. App. 1997) ("Ineffective assistance of counsel is generally 'a single ground for relief' under the post-conviction statute."  (citing *Cone v. State*, 927 S.W.2d 579, 581-82 (Tenn. Crim. App. 1995))).  As such, a petitioner may assert *via post-conviction law*, that an aggregation of instances establishes the prejudice prong of *Strickland*.  Because, here, the petitioner has asserted only the single claim of ineffective assistance of counsel, albeit alleging several instances, the petitioner cannot avail himself of the cumulative error doctrine.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE